The People of Puerto Rico, Plaintiff and Appellee, *v.* Lorenzo Aybar, Defendant and Appellant.

No. 12812. Argued November 26, 1947.—Decided January 13, 1948.

*Angel Piñero* and *Eduardo Ortiz Reyes* for appellant. *Luis Negrón Fernández, Attorney General* and *J. Rivera Barreras, Prosecuting Attorney* and *Alberto Picó Santiago, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

Lorenzo Aybar was prosecuted in the Municipal Court of Toa Alta because in the ward Candelaria of the Municipality of Toa Baja, on March 20, 1946, willingly and maliciously he violated § 5 in connection with § 2 of Act No. 25 of July 17, 1935 (Special Session, page 152). The alleged violation consisted in that while being owner of a printery he permitted and personally directed the printing of tickets of a clandestine lottery managed by him known as *"bolita, bolipool, etc."* The lower court found him guilty and he appealed.

The appeal is grounded: (*a*) on the insufficiency of the evidence and (*b*) on the nullity of the search warrant through which the evidence proving his guilt was obtained.

I

 The record shows that on March 20, 1946 Benigno Soto, District Chief of the Insular Police, Luis M. Pérez and Juan Rivera Rosa, sergeant and detective of the Insular Police, respectively, armed with a search warrant proceeded to search an outbuilding in said ward of Candelaria; that he caught the defendant on the act of printing *"bolipool"* tickets pertaining to the *bancas "Talleres"* and *"Gaviota"* which he seized from defendant and his employees, together with a printing machine of the make "Liberty Ma-

chine Co. Económica, New York'', and a plate or cliché having the names of the clandestine lotteries *"Talleres"* and *"Ji-baro"* which were to be drawn out on the· 10th, 14th, 21st and 28th of April, 1946; that defendant himself was performing the work and that in his presence his companions stated that he was the owner of the printery. In addition to this evidence the Government presented material evidence consisting of the press machine and tickets.

We are of the opinion that this evidence, if it was legally obtained, is sufficient to support the conviction. *People* v. *Salabarría,* 57 P.R.R. 128.

## II

■ Appellant assigns as error the dismissal of his motion to suppress the evidence obtained by virtue of the search warrant: (*a*) because the affidavit in support of the search warrant is insufficient; (*b*) because the place to be searched was not fully described in the search warrant and the latter directed the search of more than one building; (*c*) because the order was addressed to a policeman who resided outside the district of the magistrate who issued it and (*d*) because all the evidence was not seized on the same day.

He also challenges the legality of the order to seize the printing machine.

In the affidavit which detective Juan Rivera Rosa presented to the Justice of the Peace of Toa Baja for the purpose of having the search warrant issued, he substantially set forth that he personally knew that Lorenzo Aybar had leased a house and an outbuilding belonging to Carmelo Bravo located in the ward Candelaria of Toa Baja; that it is a frame house with galvanized iron hip roof, painted light green, with a door and two windows to the north, which is the front of the house and a wooden porch; to the south of the house there is an outbuilding; that he personally knew that Aybar was the owner, manager, director or agent of the clandestine lottery *"bancas"* known as *"bolita"* and

*"bolipool";* that he used to print and had printed tickets and slips of said lottery *"bancas"* to be distributed to the public for cash, personally and through his agents or employees; that in order to carry on this illegal business he had and used in said place the aforesaid printing machine and other implements; that he had noticed that Lorenzo Aybar and his employees carried on these transactions and that the last time that he saw him was on March 20, 1946 at eight o'clock in the morning in the aforesaid house and outbuilding.

It should be noted that the affidavit of detective Juan Rivera Rosa rests on direct evidence of which he had personal knowledge, of far more weight than the confidences and conclusions involved in *People* v. *Capriles,* 58 P.R.R. 551, 561.

A mere examination of the description of the buildings to be searched shows that the search warrant complies with the provisions of § 503 of the Code of Criminal Procedure especially if we consider that said buildings are situated in the rural zone. *State* v. *Stough,* 2 S. W.(2d) 767.

█ Appellant complains that the search warrant directed the search of two buildings, alleging that this fact invalidates the order. He also complains that the police did not confiscate the press machine on the same day that it seized the other implements which were in the outbuilding. But these questions were not raised in the lower court when the motion for the suppression of evidence was argued and therefore we cannot consider them on appeal. *People* v. *Miranda,* 56 P.R.R. 574.

█ Appellant contends that the search warrant was not issued to a policeman within the district of the justice of the peace who issued it. It was addressed as follows: "The People of Puerto Rico, to any policeman, Insular Police, Detective in the Judicial District of the Municipality of Toa Alta, Puerto Rico." We take judicial notice that the Peace Court of Toa Baja is situated within the Municipal Judicial District of Toa Alta. Notwithstanding this, appellant grounds his contention on the fact that the detective in

his affidavit in support of the search warrant stated that he was a resident of Santurce. This fact does not necessarily mean that at that time the detective was not rendering permanent or temporary service within the Municipality of Toa Alta, for the field of action of a policeman or a detective is not limited to a certain municipality or district. He may render services all over the Island of Puerto Rico.

Lastly, defendant complains that the press machine was confiscated. In ordering its confiscation, the court *a quo* merely acted pursuant to § 4 of Act No. 25 of July 17, 1935 (Special Session).[1]

Judgment is affirmed.

---

[1] This section provides, insofar as pertinent:

" . . . and other utensils or implements used in operating said illegal games, which may have formed part of the evidence received by the court in support of the offense shall, as a part of the sentence, be confiscated for the benefit of The People of Puerto Rico and sold by the marshal at public auction to the highest bidder, upon order of the corresponding court; and the proceeds of said sale, together with any sum of money that may be confiscated, shall be covered into the Treasury of Puerto Rico to be used by the second and third class municipalities, . . ."